IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DASON MUSICK,<br>    Plaintiff,<br><br>v.<br><br>PRAIRIE BAND OF THE POTAWATOMI NATION; TANNER LEMERY, in his individual capacity; DEREK TUCK, in his individual capacity; TERRY CLARK, in his individual capacity, THE BOARD OF COUNTY COMMISSIONERS OF JACKSON COUNTY, KANSAS; JACKSON COUNTY SHERIFF TIM MORSE, in his official capacity<br><br>    Defendants. | Case No.: |

## COMPLAINT

For his Complaint against Defendants Prairie Band of the Potawatomi Nation (the "PBPN"), Tanner Lemery, in his individual capacity, Derek Tuck, in his individual capacity, Terry Clark, in his individual capacity, The Board of County Commissioners of Jackson County, Kansas ("Jackson County"), and Jackson County Sheriff Tim Morse, in his official capacity, ("Jackson County Sheriff"), Plaintiff Dason Musick states:

### Parties and Jurisdiction

1. Plaintiff Dason Musick is a resident and citizen of Wabaunsee County, Kansas.

2. Defendant Prairie Band of the Potawatomie Nation is a federally recognized Indian tribe and operates the Prairie Band Casino. It maintains a Reservation, which Kansas statute defines as: "with respect to the Prairie Band Potawatomi Nation in Kansas, the reservation established by treaties with the United States concluded June 5, 1846, November 15, 1861, and February 27, 1867." Kan. Stat. Ann. § 22-2401a(6)(C).

1

3. Tanner Lemery is an officer of the PBPN police force. Officer Lemery is being sued in his individual capacity.

4. Derek Tuck is an officer of the PBPN police force. Officer Tuck is being sued in his individual capacity.

5. Terry Clark is the Chief of Police of the PBPN police force. Police Chief Clark is being sued in his individual capacity.

6. The Board of County Commissioners of Jackson County, Kansas is the governing body of Jackson County, Kansas.

7. Jackson County Sheriff Tim Morse holds the office of Sheriff. Sheriff Morse is being sued in his official capacity.

8. This Court has venue and subject matter jurisdiction because the events in this action all occurred in this District, and the claims involve a federal question under Section 1983.

**Factual Allegations**

9. On April 16, 2021, Dason Musick was a guest of the PBPN at the Prairie Band Casino when PBPN police officers unlawfully detained, arrested, and transported him to the PBPN police station, which is outside the boundaries of the PBPN Reservation, and then to the Jackson County Jail, where he was booked, charged, and prosecuted by Jackson County and Jackson County Sheriff.

10. The PBPN must comply with K.S.A. 22-2401a before PBPN Officers are permitted to exercise the powers and authority of law enforcement officers within the boundaries of the PBPN Reservation.

11. To comply with K.S.A. 22-2401a, the PBPN must, among other requirements, (1) file a map with the Jackson County clerk showing the boundaries of the PBPN Reservation, and

(2) purchase liability insurance coverage according to the terms of the statute.

12.     The PBPN has not filed a map with the Jackson County clerk showing the boundaries of the PBPN Reservation.

13.     Defendant Jackson County was aware that the PBPN had not filed a boundary map as required by K.S.A. 22-2401a.

14.     On information and belief, the PBPN did not have a policy of insurance in compliance with K.S.A. 22-2401a.

15.     Further, any insurance carrier who provides a policy to a tribe under K.S.A. 22-2401a provides notice to the attorney general that the tribe has coverage in compliance with K.S.A. 22-2401a. Thus, Jackson County was aware, or should have been aware, that the PBPN had not complied with K.S.A. 22-2401a.

16.     The PBPN and its Officers may not exercise the powers and authority of law enforcement officers outside the boundaries of the PBPN Reservation absent an agreement with a state, county, or city law enforcement agency.

17.     Defendants Jackson County and Jackson County Sheriff knew that there was no such agreement between PBPN and a state, county, or city law enforcement agency.

18.     The PBPN police station is not on the Potawatomi Reservation. It is located at 16344 Q Road, Mayetta, KS 66509, which is outside the Reservation.

19.     Mr. Musick had been winning at the gambling table and celebrating when PBPN Officers Lemery and Tuck approached him and directed him to leave the Casino. The Officers told him that he was intoxicated and then devised a Catch 22 that ensured he would be arrested. They told him that he must leave the casino immediately but was not permitted to drive his vehicle. Given that he lived miles from the casino, there was no way that Mr. Musick could comply with

these instructions.

20. The Officers pulled him over in the Casino parking lot and forced him to get out of his vehicle. They administered two Preliminary Breath Tests, which he passed by a wide margin, demonstrating that his blood alcohol level was well below the legal limit.

21. Nevertheless, Officers Lemery and Tuck handcuffed Mr. Musick and transported him to the PBPN police station.

22. The PBPN and its Officers did not have authority under K.S.A. 22-2401a to exercise law enforcement power and authority over Mr. Musick within the boundaries of the Reservation.

23. The PBPN and its Officers did not have an agreement with the Jackson County Sheriff's Office to exercise law enforcement power and authority over Mr. Musick outside the boundaries of the Reservation

24. At the PBPN police station, which is outside the boundaries of the Reservation, the Officers required Mr. Musick to submit to two additional breathalyzer samples. Officers claimed that Mr. Musick's second sample exceeded the legal limits for intoxication. However, as Officer Lemery later admitted, the breathalyzer at the PBPN station was producing false results.

25. PBPN Officers Lemery and Tuck and Police Chief Clark had known for some time that the breathalyzer at the PBPN station was producing false results.

26. Thus, the only two accurate breathalyzer tests (i.e., the two field tests) showed that Mr. Musick was not intoxicated—and by a wide margin. There was, therefore, no probable cause to detain or arrest Mr. Musick.

27. Pursuant to K.S.A. 8-1001, any test for the presence of alcohol in any person who operates or intends to operate a vehicle within the State of Kansas, "must be administered at the

direction of a law enforcement officer."

28. When PBPN Officers Lemery and Tuck administered tests to Mr. Musick for the presence of alcohol, they were not legally acting as "law enforcement officers." The PBPN and its Officers did not have authority under K.S.A. 22-2401a to exercise law enforcement power and authority within the boundaries of the Reservation, and they did not have an agreement with the Jackson County Sheriff's Office to exercise law enforcement power and authority outside the boundaries of the Reservation

29. Nevertheless, the PBPN Officers transported Mr. Musick to the Jackson County Jail and filed a knowingly false affidavit to charge him with driving under the influence, disorderly conduct, and criminal trespass.

30. During the drivers' license administrative hearing, the Police Chief Clark attempted to testify in violation of K.S.A. 8-1020(g), requiring the Administrator to repeatedly instruct him to be silent.

31. At the evidence suppression hearing, PBPN Officer Lemery admitted the breathalyzer at the PBPN police station was not working properly when they tested Mr. Musick.

32. In addition, the County Clerk testified the PBPN has not filed the map required under K.S.A. 22-2401a, which is required for the PBPN and its Officers to exercise the powers and authority of law enforcement officers.

33. Further, the Police Chief Clark initiated *ex parte* contact with Magistrate Campbell, who was presiding over the prosecution of Mr. Musick, in an attempt to influence the outcome against Mr. Musick.

34. As a result, Magistrate Campbell recused himself from the matter.

35. The District Judge took the matter over and suppressed the breathalyzer evidence.

36. In 2023, Jackson County dismissed the remaining charges.

37. Ultimately, after being arrested in April 2021 and the charges being dismissed in April 2023, Mr. Musick was forced to endure two years of criminal prosecution, being forced to suffer the shame, embarrassment, and the anxiety of a looming criminal prosecution.

38. The PBPN is subject to suit under the Kansas Tort Claims Act pursuant to K.S.A. 22-2401a and the Compact between the PBPN and the State of Kansas.

39. Mr. Musick has sent notice of claim under the Kansas Tort Claims Act to the PBPN, Jackson County, and Jackson County Sheriff.

40. On March 11, 2024, each of the PBPN, Jackson County, and Jackson County Sheriff received Mr. Musick's notice of claim under the Kansas Tort Claims Act.

**Claims for Relief**

**Count I: Kansas Tort Claims Act - Negligence and Gross Negligence against the PBPN**

41. All of the above facts are incorporated by reference as though repeated herein.

42. Under the Kansas Tort Claims, the PBPN is liable for the acts through its employees acting within the scope of their employment.

43. The PBPN owed a duty of care to Mr. Musick and assumed a duty of care once they detained him.

44. The PBPN grossly and wantonly breached its duties because it knew its officers did not have the authority to exercise law enforcement power and authority over Mr. Musick within the boundaries of the Reservation because the PBPN had not complied with the non-discretionary requirements of K.S.A. 22-2401a.

45. The PBPN grossly and wantonly breached its duties because it knew its officers did not have the authority to exercise law enforcement power and authority over Mr. Musick

outside the boundaries of the Reservation because the PBPN did not have in place the non-discretionary requirement to act only if it has an agreement with a law enforcement agency to exercise such authority.

46.     The PBPN grossly and wantonly breached its duties because it knew its officers did not have the authority to exercise law enforcement power and authority to administer tests for the presence of alcohol because the PBPN had not complied with the non-discretionary requirements of K.S.A. 8-1001.

47.     The PBPN grossly and wantonly breached its duties because it knew that the breathalyzer at its police station was producing false results and that its officers were using these false results to unlawfully prosecute individuals.

48.     The PBPN grossly and wantonly breached its duty of care by illegally detaining Mr. Musick after passing two field breathalyzers, transporting him outside of the boundaries of the reservation to the police station, subjecting him to testing by a breathalyzer machine they knew provided false results, illegally detaining and transporting him to the Jackson County jail, providing false information to Jackson County, and attempting to disrupt and influence Mr. Musick's criminal proceedings.

49.     As a result, Mr. Musick suffered loss of liberty, mental anguish, humiliation, degradation, emotional pain and suffering, and other continuing injuries and damages.

**Count II: Kansas Tort Claims Act - False Imprisonment against the PBPN**

50.     All of the above facts are incorporated by reference as though repeated herein.

51.     Under the Kansas Tort Claims, the PBPN is liable for the acts through its employees acting within the scope of their employment.

52.     The PBPN knew its officers did not have the authority to exercise law enforcement

power and authority over Mr. Musick within the boundaries of the Reservation because the PBPN had not complied with K.S.A. 22-2401a.

53. The PBPN knew its officers did not have the authority to exercise law enforcement power and authority over Mr. Musick outside the boundaries of the Reservation because the PBPN did not have any agreement with a law enforcement agency to exercise such authority.

54. The PBPN grossly and wantonly breached its duties because it knew its officers did not have the authority to exercise law enforcement power and authority to administer tests for the presence of alcohol because the PBPN had not complied with the non-discretionary requirements of K.S.A. 8-1001.

55. The PBPN grossly and wantonly unlawfully restrained Mr. Musick without the legal authority to act under the authority of a law enforcement officer.

56. Further, the PBPN grossly and wantonly unlawfully restrained Mr. Musick by illegally detaining Mr. Musick without probable cause after he passed two field breathalyzers, transporting him outside of the boundaries of the reservation to the police station, subjecting him to testing by a breathalyzer machine they knew provided false results, illegally detaining and transporting him to the Jackson County jail, providing false information to Jackson County, and attempting to disrupt and influence Mr. Musick's criminal proceedings.

57. As a result, Mr. Musick suffered loss of liberty, mental anguish, humiliation, degradation, emotional pain and suffering, and other continuing injuries and damages.

**Count III: Kansas Tort Claims Act - Outrage against the PBPN**

58. All of the above facts are incorporated by reference as though repeated herein.

59. Under the Kansas Tort Claims, the PBPN is liable for the acts through its employees acting within the scope of their employment.

60. The PBPN, intentionally, grossly, and wantonly, acted in an extreme and outrageous manner by unlawfully exercising the power and authority of law enforcement officers when the PBPN knew its officers did not have the authority to exercise law enforcement power and authority over Mr. Musick within the boundaries of the Reservation because the PBPN had not complied with K.S.A. 22-2401a, did not have any agreement with a law enforcement agency to exercise such authority outside of the Reservation, and did not have the authority to exercise law enforcement power and authority to administer tests for the presence of alcohol pursuant to K.S.A. 8-1001.

61. The PBPN, intentionally, grossly, and wantonly, acted in an extreme and outrageous manner by arresting Mr. Musick despite passing two field sobriety tests, using a breathalyzer machine that they knew produced false results, providing false information to Jackson County, and attempting to influence Dason's criminal proceedings to falsely prosecute him. Based upon the PBPN's behavior with respect to Dason, this was part of a systematic policy or custom and not an isolated incident.

62. The PBPN's unlawful conduct caused Plaintiff extreme and severe mental distress. Mr. Musick suffered loss of liberty, mental anguish, humiliation, degradation, emotional pain and suffering, and other continuing injuries and damages.

**Count IV: Violation of 42 U.S.C. § 1983 against Officers Lemery and Tuck and Police Chief Clark, in their individual capacities**
**Malicious Prosecution and Unlawful Pretrial Detention**

63. All of the above facts are incorporated by reference as though repeated herein.

64. Defendant PBPN Officers Lemery and Tuck and Police Chief Clark, while acting individually and jointly, and in conspiracy with themselves, under the color of state law, deprived Mr. Musick of his constitutional rights.

65. Defendant PBPN Officers Lemery and Tuck, with the knowledge of Police Chief Clark, unlawfully exercised the authority of a law enforcement officer over Mr. Musick when they had no such authority within the boundaries of the Reservation because the PBPN had not complied with K.S.A. 22-2401a, did not have any agreement with a law enforcement agency to exercise such authority outside of the Reservation, and did not have the authority to administer tests for the presence of alcohol pursuant to K.S.A. 8-1001.

66. Defendant PBPN Officers Lemery and Tuck administered two field sobriety tests to Mr. Musick, which reflected that Mr. Musick was not unlawfully intoxicated.

67. Nevertheless, Defendant PBPN Officers Lemery and Tuck unlawfully detained, handcuffed, and transported Mr. Musick to the PBPN police station, where he was confined.

68. Defendant PBPN Officers Lemery and Tuck then administered sobriety tests at the station using a machine they and Police Chief Clark knew was not working properly.

69. Based upon the knowingly false information, Defendant PBPN Officers Lemery and Tuck further unlawfully detained, handcuffed, and transported Mr. Musick to the Jackson County Jail.

70. Defendant PBPN Officers Lemery then filed a false affidavit based upon the false sobriety test results, of which Defendant PBPN Officer Tuck was aware.

71. Knowing that PBPN Officers had submitted false information, Police Chief Clark attempted to illegally testify during Mr. Musick's administration hearing, in violation of K.S.A. 8-1020(g), in an attempt to fraudulently impact the outcome.

72. Then, Police Chief Clark initiated ex parte contact with Magistrate Campbell, who was presiding over the prosecution of Mr. Musick, in a further attempt to fraudulently influence the outcome against Mr. Musick.

10

73. Defendant PBPN Officers Lemery and Tuck and Police Chief Clark caused Mr. Musick to be unreasonably seized and detained and improperly initiated, continued, and perpetuated judicial proceedings against Mr. Musick without probable cause and with knowingly false information in violation of his rights under the Fourth Amendment and the procedural and substantive due process clauses of the Fourteenth Amendment.

74. Defendant PBPN Officers Lemery and Tuck and Police Chief Clark acted intentionally, with malice, and with reckless indifference to Mr. Musick's rights.

75. As a result, Mr. Musick suffered loss of liberty, mental anguish, humiliation, degradation, emotional pain and suffering, and other continuing injuries and damages.

**Count IV: Violation of 42 U.S.C. § 1983 against Officers Lemery and Tuck and Police Chief Clark, in their individual capacities**

**Conspiracy to Deprive Mr. Musick of His Constitutional Rights**

76. All of the above facts are incorporated by reference as though repeated herein.

77. Defendant PBPN Officers Lemery and Tuck and Police Chief Clark, acting in concert as co-conspirators, knowingly reached an agreement between themselves to submit false and fabricated evidence to convict Mr. Musick, including by presenting knowingly false breathalyzer results, a false affidavit, and attempting to intervene in Mr. Musick's judicial proceedings to falsely punish and convict him.

78. Defendant PBPN Officers Lemery and Tuck and Police Chief Clark conspired to accomplish an unlawful purpose by unlawful means. Each of these co-conspirators committed willful overt acts or willfully refrained from disclosing exculpatory evidence to deprive Mr. Musick of his constitutional rights.

79. Defendant PBPN Officers Lemery and Tuck and Police Chief Clark acted intentionally, with malice, and with reckless indifference to Mr. Musick's rights.

80. As a result, Mr. Musick suffered loss of liberty, mental anguish, humiliation, degradation, emotional pain and suffering, and other continuing injuries and damages.

**Count V: Violation of 42 U.S.C. § 1983 against Jackson County and Jackson County Sheriff**

81. All of the above facts are incorporated by reference as though repeated herein.

82. The policies, practices, and customs of Defendants Jackson County and the Jackson County Sheriff permitted the PBPN and its officers to act under color of state law and exercise law enforcement power and authority within the boundaries of the Reservation.

83. Jackson County and the Jackson County Sheriff knew that the PBPN and its officers did not have legal authority to act as law enforcement because it had not complied with K.S.A. 22-2401a because the PBPN had not filed the required map or obtained the required liability insurance policy.

84. Jackson County and the Jackson County Sheriff knew that the PBPN and its officers did not have legal authority to act as law enforcement to administer tests for the presence of alcohol because the PBPN had not complied with the non-discretionary requirements of K.S.A. 8-1001.

85. The policies, practices, and customs of Defendants Jackson County and the Jackson County Sheriff permitted the PBPN and its officers to act under color of state law and exercise law enforcement power and authority outside the boundaries of the Reservation.

86. Jackson County and the Jackson County Sheriff knew that the PBPN did not have legal authority to act as law enforcement because it did not have any agreement with a law enforcement agency to exercise such authority.

87. It was the policy, practice, and custom of Defendants Jackson County and the Jackson County Sheriff to permit the PBPN and its officers to detain, arrest, and transport

individuals to the Jackson County Jail to be prosecuted in Jackson County courts, resulting in financial benefit to the County.

88. The policies, practices, and customs of Defendants Jackson County and the Jackson County directly caused the deprivation of Mr. Musick's constitutional rights because they permitted PBPN to act as agent of the County even though PBPN officers did not have legal authority and were not trained under Kansas law, such as determining probable cause, administering and interpreting tests to determine intoxication, and maintaining breathalyzer testing equipment.

89. Defendants Jackson County and the Jackson County acted intentionally, with malice, and with reckless indifference to Mr. Musick's rights.

90. As a result, Mr. Musick suffered loss of liberty, mental anguish, humiliation, degradation, emotional pain and suffering and other continuing injuries and damages.

**Count VI: Negligence and Gross Negligence against Jackson County and Jackson County Sheriff**

91. All of the above facts are incorporated by reference as though repeated herein.

92. Defendants Jackson County and the Jackson County Sheriff owed a duty of care to Mr. Musick and assumed a duty of care once they detained him in their jail and prosecuted him.

93. Defendants Jackson County and the Jackson County Sheriff grossly and wantonly breached their duty of care by permitting the PBPN and its officers to exercise law enforcement power and authority within the boundaries of the Reservation to detain, arrest, and provide evidence against individuals for alleged violations of Kansas law. Jackson County and the Jackson County Sheriff knew that the PBPN and its officers did not have legal authority to act as law enforcement because it had not complied with K.S.A. 22-2401a because the PBPN had not filed the required map or obtained the required liability insurance policy.

94. Defendants Jackson County and the Jackson County Sheriff grossly and wantonly breached their duty of care by permitting the PBPN and its officers to exercise law enforcement power and authority outside the boundaries of the Reservation to detain, arrest, and provide evidence against individuals for alleged violations of Kansas law. Jackson County and the Jackson County Sheriff knew that the PBPN did not have legal authority to act as law enforcement because it did not have any agreement with a law enforcement agency to exercise such authority.

95. Defendants Jackson County and the Jackson County Sheriff grossly and wantonly breached their duty of care by permitting the PBPN and its officers to exercise law enforcement power and authority to detain, administer tests for the presence of alcohol, arrest, and provide evidence against individuals for alleged violations of Kansas law. Jackson County and the Jackson County Sheriff knew that the PBPN did not have legal authority to act as law enforcement officers.

96. Defendants Jackson County and the Jackson County Sheriff grossly and wantonly breached their duty of care by permitting the PBPN and its officers to detain, arrest, and transport individuals to the Jackson County Jail to be prosecuted in Jackson County courts, resulting in financial benefit to the County.

97. Defendants Jackson County and the Jackson County Sheriff grossly and wantonly breached their duty of care by permitting PBPN to act as an agent of the County, even though PBPN officers did not have legal authority and were not trained under Kansas law, such as determining probable cause, administering and interpreting tests to determine intoxication, and maintaining breathalyzer testing equipment.

98. As a result, Mr. Musick suffered loss of liberty, mental anguish, humiliation, degradation, emotional pain and suffering, and other continuing injuries and damages.

**Count VII: False Imprisonment against Jackson County and Jackson County Sheriff**

99. All of the above facts are incorporated by reference as though repeated herein.

100. Defendants Jackson County and the Jackson County Sheriff permitted the PBPN and its officers to exercise law enforcement power and authority within the boundaries of the Reservation while knowing that the PBPN and its officers did not have legal authority to act as law enforcement because it had not complied with K.S.A. 22-2401a because the PBPN had not filed the required map or obtained the required liability insurance policy.

101. Defendants Jackson County and the Jackson County Sheriff permitted the PBPN and its officers to exercise law enforcement power and authority over Mr. Musick outside the boundaries of the Reservation while knowing the PBPN did not have any agreement with a law enforcement agency to exercise such authority.

102. Defendants Jackson County and the Jackson County Sheriff permitted the PBPN and its officers to exercise law enforcement power and authority over Mr. Musick to administer tests for the presence of alcohol while knowing the PBPN did not have any agreement with a law enforcement agency to exercise such authority.

103. Defendants Jackson County and the Jackson County Sheriff permitted and ratified the acts of the PBPN to unlawfully restrain Mr. Musick without the legal authority to act under the authority of a law enforcement officer.

104. Further, Defendants Jackson County and the Jackson County Sheriff continued to detain, imprison, and prosecute Mr. Musick while relying on false information presented from PBPN officers who had no authority to act as law enforcement.

105. As a result, Mr. Musick suffered loss of liberty, mental anguish, humiliation, degradation, emotional pain and suffering, and other continuing injuries and damages.

WHEREFORE, based on the above and foregoing, Plaintiff respectfully requests judgment against Defendants for all damages allowable by law for each of the Counts described above, each Count in excess of $75,000, and such damages that a jury determines to be fair and reasonable for all injuries and damages, together with costs herein incurred and expended, and for such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable in this matter.

Respectfully submitted,

**Fagan & Emert, LLC**

/s/Christohper S. Dove
Christopher S. Dove        #21251
Brennan P. Fagan           #20430
800 New Hampshire St., Ste. 110
Lawrence, KS 66044
(785) 331-0300 – Telephone
(785) 331-0303 – Facsimile
cdove@faganemert.com
bfagan@faganemert.com
Attorneys for Plaintiff