## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DASON MUSICK,**

      **Plaintiff,**

**v.**

**PRAIRIE BAND POTAWATOMI NATION,**
**et al.,**

      **Defendants.**

**Case No. 24-2299-DDC-TJJ**

### MEMORANDUM AND ORDER

Plaintiff Dason Musick asserts constitutional and tort-based claims stemming from his arrest and prosecution for driving under the influence, criminal trespass, and disorderly conduct. Relevant to this Order, he asserts three causes of action against the Board of County Commissioners of Jackson County (BOCC) and Jackson County (Kansas) Sheriff Tim Morse, in his official capacity. Plaintiff's three claims against these defendants are: a § 1983 claim (Count V); a state law negligence claim (Count VI); and a state law false imprisonment claim (Count VII). Defendants moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) on all three pertinent claims.[1] *See* Doc. 15.

Plaintiff premises his claims against the two moving defendants—the BOCC and Sheriff Morse—on the alleged wrongful conduct of officers employed by Prairie Band of the Potawatomie Nation (PBPN), not Jackson County. *First*, defendants ask the court to dismiss BOCC as a defendant because it's redundant to sue both BOCC and Sheriff Morse in his official

---

[1] As explained below, the court converts defendants' Rule 12(c) motion into a 12(b)(6) motion. *See below* § I.

capacity. Doc. 15 at 4. The court declines to decide this unsettled question based on the parties' limited briefing. *Second*, defendants ask the court to conclude plaintiff's § 1983 false imprisonment, state law false imprisonment, and state law negligence claims are barred by the statute of limitations. *Id.* at 5–6, 10, 11. The court dismisses both false imprisonment claims but declines to dismiss the negligence claim on this basis. *Third*, defendants contend plaintiff has failed to state § 1983 malicious prosecution and negligence claims. *Id.* at 6–10. Plaintiff's § 1983 malicious prosecution claim focuses on whether the alleged PBPN officers' conduct is fairly attributable to defendants. The court concludes plaintiff has alleged sufficient facts to support a finding on that fairly attributable requirement. But, in contrast, it concludes plaintiff hasn't alleged sufficiently an agency relationship between the PBPN officers and defendants. So, plaintiff's duty of care theory for his negligence claim fails, as a matter of law.

Now, the court begins with a housekeeping matter: why it converts defendants' motion into a motion to dismiss.

## I.     Procedural Defect Under Rule 12(c)

Defendants improperly moved for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c) (allowing motion "[a]fter the pleadings are closed"). That's because defendants filed their 12(c) motion before the pleadings closed. *See Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 809 n.3 (10th Cir. 2021) ("The pleadings are not closed until all defendants file an answer[.]" (quotation cleaned up)); *Smith v. G & W Foods*, No. 20-2517-JAR-TJJ, 2021 WL 1251114, at *2 (D. Kan. Apr. 5, 2021) ("When a plaintiff files an action against multiple defendants, the pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of an answer." (quotation cleaned up)). "[A]

remedy under Rule 12(c) is unavailable until after all defendants have filed an answer." *Smith*, 2021 WL 1251114, at *2.

Defendants moved for judgment on the pleadings after filing *their* Answer. *See* Doc. 15; Doc. 14 (Answer). But no other defendant had filed an answer at that time. So, the pleadings remain open—even today. Defendant PBPN has yet to answer the Complaint. In sum, the pleadings aren't closed here and that makes a Rule 12(c) motion inappropriate.

The court exercises its discretion, however, and construes defendants' Motion for Judgment on the Pleadings as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). It does so for two reasons: *One*, the same standard applies to defendants' motion whether the court treats it as one seeking judgment on the pleadings or as one seeking to dismiss those claims. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). *Two*, addressing the substance of defendants' motion now will serve the interests advanced by Fed. R. Civ. P. 1—the "just, speedy, and inexpensive determination of every action and proceeding."

The court next turns to the facts controlling this motion based on the governing procedural standard.

## II.   Background

On a Rule 12(b)(6) motion, the court accepts plaintiff's well-pleaded allegations as true and views them in the light most favorable to him. *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 556 (10th Cir. 1999).

### *Plaintiff's Arrest*

On April 16, 2021, plaintiff visited the Prairie Band Casino & Resort on the PBPN reservation. Doc. 1 at 2, 3 (Compl. ¶¶ 9, 19). While he was gambling, PBPN police officers Tanner Lemery and Derek Tuck approached him and told him to leave the casino immediately.

*Id.* at 3 (Compl. ¶ 19).  The officers informed plaintiff that they thought he was too intoxicated to drive and he'd need to find another way home.  *Id.*  Because Musick lived too far from the casino to walk, he attempted to drive.  *Id.* at 3–4 (Compl. ¶ 19).  Officers Lemery and Tuck pulled him over before he left the parking lot.  *Id.* at 4 (Compl. ¶ 20).

The officers administered two preliminary breath tests, but neither indicated that plaintiff's blood alcohol content exceeded the legal limit.  *Id.*  Still, the officers handcuffed him and transported him to the PBPN's police station in Mayetta, Kansas, just outside the reservation.  *Id.* at 3, 4 (Compl. ¶¶ 18, 21).  There, the officers administered two more breathalyzer tests.  *Id.* at 4 (Compl. ¶ 24).  The PBPN officers claimed the second sample exceeded the legal limit.  *Id.*  At a later suppression hearing, Officer Lemery testified that he knew the station's breathalyzer was faulty, and that it was yielding false positives around the time he and Officer Tuck tested plaintiff.  *Id.* at 4, 5 (Compl. ¶¶ 25, 31).  Still, the officers transported plaintiff to the Jackson County Jail.  *Id.* at 5 (Compl. ¶ 29).  They filed an affidavit supporting charges against him for driving under the influence, disorderly conduct, and criminal trespass.  *Id.*

During plaintiff's prosecution in Kansas state court, PBPN Police Chief Terry Clark attempted to testify unlawfully at an administrative hearing.  *Id.* at 5 (Compl. ¶ 30) (alleging Clark's attempted testimony violated Kan. Stat. Ann. § 8-1020(g)).  What's more, Clark "initiated *ex parte* contact with [Kansas] Magistrate Campbell, who was presiding over the prosecution of Mr. Musick, in an attempt to influence the outcome against [him]."  *Id.* (Compl. ¶ 33).  Magistrate Campbell recused, and the state court District Judge suppressed the faulty breathalyzer evidence.  *Id.* (Compl. ¶¶ 34–35).  By 2023, Jackson County had dismissed all charges against plaintiff.  *Id.* at 6 (Compl. ¶ 36).

### Policing Authority and the Reservation Boundary

Plaintiff's arrest and prosecution raise issues of tribal law enforcement authority. Plaintiff argues that the PBPN officers acted without legal authority. *Id.* at 4 (Compl. ¶ 22). He alleges PBPN didn't comply with Kan. Stat. Ann. § 22-2401a—which gives tribal police authority to act as law enforcement officers within reservation boundaries—because PBPN hadn't filed a map of the reservation's boundaries with the Jackson County Clerk or secured a statutorily compliant liability insurance policy. *Id.* at 2–3 (Compl. ¶¶ 10–15). He also asserts that the arresting officers acted without law enforcement authority outside the reservation by transporting him to PBPN's police department and to the Jackson County Jail. *Id.* at 3, 5 (Compl. ¶¶ 16–18, 28–29). Plaintiff's transport was unlawful—he argues—because the tribe's law enforcement authority outside the reservation depends on an agreement with state, county, or city law enforcement, and no such agreement existed here. *Id.* at 3 (Compl. ¶¶ 16–17).

### BOCC and Sheriff Morse's Involvement

Plaintiff alleges Jackson County and Sheriff Morse knew that PBPN was exercising law enforcement authority without complying with Kan. Stat. Ann. § 22-2401a and also without an agreement with any state, county, or city law enforcement agency. *Id.* (Compl. ¶¶ 15, 17). And, plaintiff asserts, the "policies, practices, and customs" of BOCC and Sheriff Morse "permitted" a host of wrongful conduct by PBPN. *Id.* at 12–13 (Compl. ¶¶ 82–88).

The court outlines, next, the legal standard for assessing Rule 12(b)(6) motions to dismiss.

### III.    Legal Standard

The court can grant a motion to dismiss when the factual allegations in the complaint fail "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

While the court must assume that the complaint's factual allegations are true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).

Defendants assert three arguments to support their motion: (1) BOCC isn't a properly named party; (2) the statute of limitations bars some of plaintiff's claims; and (3) plaintiff otherwise has failed to state a claim. The court addresses the three arguments in that order.

## IV.    Analysis

### A.    BOCC's Party Status

Plaintiff names both BOCC and Sheriff Morse, sued in his official capacity, as defendants. Doc. 1 at 2 (Compl. ¶¶ 6–7). Defendants argue that BOCC isn't a proper party to

this suit. Doc. 15 at 4. As a matter of law, Sheriff Morse, not BOCC, has custody over the county jail. *Id.* (citing Kan. Stat. Ann. § 19-811). And because BOCC isn't "'legally responsible for'" the "'promulgation of [Sheriff's Department] policies or procedures . . . particularly with regard to jail operations[,]'" defendants assert that plaintiff can't prevail on his claims against the BOCC. *Id.* (quoting *Est. of Belden v. Brown Cnty.*, 261 P.3d 943, 970 (Kan. App. 2011)). Plaintiff responds that the Tenth Circuit already has concluded Kansas sheriffs are county officers. Doc. 25 at 3 (citing *Couser v. Gay*, 959 F.3d 1018, 1026–27 (10th Cir. 2020)). And Kansas law provides that in suits against the county, plaintiff must name the BOCC. *Id.* (citing Kan. Stat. Ann. § 19-105).

These arguments oversimplify the issue. Kansas law[2] isn't clear about the key underlying question: Should a plaintiff who alleges misconduct arising from sheriff's department policies sue the sheriff (in his official capacity) or BOCC? *See Bledsoe v. Bd. of Cnty. Comm'rs*, 501 F. Supp. 3d 1059, 1140–44 (D. Kan. 2020) (compiling cases from our court with inconsistent holdings whether a plaintiff should bring municipal liability claims against the sheriff in his official capacity or the board of county commissioners), *rev'd in part on other grounds sub nom. Bledsoe v. Carreno*, 53 F.4th 589 (10th Cir. 2022). Much of this uncertainty stems from *Couser*.

In *Couser*, our Circuit concluded a Kansas Sheriff is a county official when sued in his official capacity for § 1983 claims—so, he's *not* entitled to state sovereign immunity, at least when acting in his law enforcement capacity. 959 F.3d at 1026–27. Essentially, the Circuit reasoned, a suit against the sheriff is a suit against the county. *Id.* at 1022–32. And in suits against the county, as plaintiff points out, plaintiffs must name the BOCC as defendant. Kan.

---

[2]    The court consults Kansas law to determine whether the municipal defendants have the "Capacity to Sue or Be Sued[.]" Fed. R. Civ. P. 17(b)(3) (instructing that "the law of the state where the court is located" governs whether a party has the "Capacity to Sue or Be Sued" when the party is neither an individual who is not acting in a representative capacity nor a corporation).

Stat. Ann. § 19-105 ("In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the board of county commissioners." (quotation cleaned up)). But Kansas law also provides that a county has no authority to supervise or train the sheriff's department. *Bledsoe*, 501 F. Supp. 3d at 1139. And it provides that a board of county commissioners "does not control or make policies or procedures" for a sheriff's office. *Jarrett v. City of Garnett*, No. 24-2151-HLT-TJJ, 2024 WL 4363244, at *7 n.10 (D. Kan. Oct. 1, 2024) (first citing *Bd. of Cnty. Comm'rs v. Nielander*, 62 P.3d 247 (Kan. 2003); and then citing *Wilson v. Sedgwick Cnty. Bd. of Cnty. Comm'rs*, No. 05-1210-MLB, 2006 WL 2850326, at *4 (D. Kan. Oct. 3, 2006)).

Our court has held, post-*Couser*, that a suit may proceed against a sheriff in his official capacity—even if the board of county commissioners isn't a surviving defendant. *See Swearingen v. Pleasanton Unified Sch. Dist. 344*, 641 F. Supp. 3d 1141, 1185 (D. Kan. 2022) (noting the tension between *Couser* and *Nielander*, but concluding suit could proceed with Sheriff as defendant after dismissing all claims against board of county commissioners). But the court hasn't resolved the question clearly: "Who must plaintiff sue to bring his municipal liability claim against the county based on the policies and practices of the sheriff and his department? [The Sheriff] in his official capacity? The [BOCC]? Both?" *Bledsoe*, 501 F. Supp. 3d at 1141. *Compare Jarrett*, 2024 WL 4363244, at *7 n.10 (allowing suit against board of county commissioners to proceed based on sheriff's alleged wrongdoing), *and Pray v. Sedgwick Cnty., Kan. Bd. of Cnty. Comm'rs*, No. 23-1231-TC-BGS, Doc. 77 (D. Kan. Mar. 21, 2025) (declining to dismiss board of county commissioners on basis that it doesn't have authority to make policy for sheriff's office), *with Rothermel v. Sedgwick Cnty.*, No. 22-1194-JWB, 2024 WL 814504, at *3 (D. Kan. Feb. 27, 2024) (dismissing claims against board of county

commissioners for sheriff's alleged wrongdoing because "an elected county sheriff is not a subordinate of the board of county commissioners").

The parties spend little of their briefs addressing this vexing question. To be sure, they cite some of the relevant cases. *See* Doc. 15 at 4 (defendants first citing *Est. of Belden*, 261 P.3d 943; and then citing *Gardiner v. McBryde*, No. 15-3151-DDC-JPO, 2020 WL 42272, at *7 (D. Kan. Jan. 3, 2020)); Doc. 25 at 2–3 (plaintiff first citing *Bledsoe*, 501 F. Supp. 3d at 1139–44; then citing *Couser*, 959 F.3d 1018). And defendants identify the tension those cases create. Doc. 30 at 1 ("This court expressly declined to decide the issue [about] the propriety of suing both the Sheriff and the BOCC . . . for a *Monell* municipal liability claim." (citing *Bledsoe*, 501 F. Supp. 3d at 1144)). Defendants also ask the court to apply a Kansas Court of Appeals decision—*Estate of Belden*—and a pre-*Couser*, pre-*Bledsoe* decision by this court—*Gardiner*. Doc. 30 at 2. In *Estate of Belden*, the Kansas Court of Appeals concluded that county commissioners didn't have a statutory duty to control the "hiring or training of personnel or promulgation of policies or procedures" within the Sheriff's office. 261 P.3d at 970. So, the *individual* commissioners, who are members of the board of county commissioners, weren't liable—personally—for a breach of that nonexistent duty. *Id.* But the Kansas Court of Appeals never addressed—much less decided—whether the board of county commissioners was exempt from liability on the same basis.

The court declines to opine here whether Kansas would reach the same conclusion against the board of county commissioners itself. And it also declines to decide—without more briefing—whether the court's decision in *Gardiner* still applies the same way after *Couser*. Given the uncertainty in the law, and in the briefing as well, the court declines to decide whether

it should dismiss BOCC on the basis of redundancy.[3]  Instead, the court moves on to defendants'

next argument, the one invoking the statute of limitations and asserting plaintiff's suit is

untimely.

**B.    Statutes of Limitation**

Defendants argue that three of plaintiff's causes of action against the moving defendants

are time-barred.  Doc. 15 at 5, 10, 11.  They argue plaintiff's § 1983 claim—to the extent it

asserts false imprisonment—is time-barred by the two-year statute of limitations.  *Id.* at 5.

Likewise, they argue plaintiff's state law false imprisonment claim is barred by a one-year

statute of limitations.  *Id.* at 11.  Finally, they invoke the two-year statute of limitations for

plaintiff's negligence claim.  *Id.* at 10.  Plaintiff's Response addresses but one of defendants'

three arguments.

The court addresses all three of defendants' arguments, below, in turn.

**1.    § 1983 False Imprisonment (Count V)**

Start with a clarification:  Plaintiff's § 1983 claim against these moving defendants

doesn't specify whether it's based on false imprisonment or malicious prosecution.  *See* Doc. 1 at

12–13 (Compl. ¶¶ 81–90).  In § 1983 suits asserting unconstitutional imprisonment, plaintiffs

have "at least two potential constitutional claims:"  false arrest/imprisonment and malicious

prosecution.  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  Assuming

---

[3]    What's more, the tenor of the court's task—for purposes of this Order—is the same regardless of which defendant remains as the target of plaintiff's suit.  It must evaluate *Monell* liability either way.  *See Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Suing individual defendants in their official capacities under § 1983, we've recognized, is essentially another way of pleading an action against the county or municipality they represent. . . . Because of this, we apply the standard of liability to municipalities and counties[.]"); *Dunn v. City of Newton*, No. 02-1346-WEB, 2003 WL 21497002, at *1 (D. Kan. Apr. 15, 2003) ("Regardless of whether the § 1983 claim is characterized as one against the municipality or one against the municipality's officers in their official capacities, this portion of the claim is really against the municipality, and its potential liability under § 1983 is subject to the rule of *Monell*.").

plaintiff asserts both theories as predicates of his § 1983 claim, defendants argue that the false imprisonment component of the claim is time-barred. Doc. 15 at 5 (arguing "[i]t appears Plaintiff Musick asserts both types of claims. The statute of limitations bars the former—a Fourth Amendment claim for false arrest and/or imprisonment preceding the institution of legal process" (quotation cleaned up)). Plaintiff didn't respond to this argument. *See generally* Doc. 25.

Our Circuit hasn't decided whether "failure to address an argument in response to a motion to dismiss categorically constitutes abandonment or requires a court to deem claims abandoned." *Brown v. Nationwide Ins. Co.*, No. 21-4122, 2023 WL 4174064, at *9 n.9 (10th Cir. June 26, 2023). But it has affirmed dismissal of a claim "'when a party fails to develop arguments related to a discrete issue or when a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss[.]'" *Id.* at *9 (quoting *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019)); *see also C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022) ("The district court correctly dismissed Plaintiff's facial challenge here because he abandoned it by not addressing it in his response to Defendants' motion to dismiss."). Given this Circuit authority, the court considers plaintiff's § 1983 false-imprisonment-based claim against BOCC and Sheriff Morse abandoned. *See Cortishae-Eier v. Ford Motor Co.*, No. 23-3081-EFM-TJJ, 2023 WL 5625311, at *3 (D. Kan. Aug. 31, 2023) (finding plaintiff abandoned some claims by "failing to substantively respond" on motion to dismiss).

## 2.    State Law False Imprisonment (Count VII)

The court takes the identical approach to plaintiff's state law false imprisonment claim. Defendants argue plaintiff's claim is barred by the one-year statute of limitations in Kan. Stat.

Ann. § 60-514(b).  Doc. 15 at 11.  Again, plaintiff fails to address this argument in his Response

to defendants' motion.  *See generally* Doc. 25.  So, again, the court considers the claim

abandoned.  *See, e.g.*, *C1.G ex rel. C.G.*, 38 F.4th at 1282.

### 3. Negligence (Count VI)

In contrast, plaintiff responds to one of defendants' statute of limitations arguments.  But

this time, it's defendants who jump ship.  In their motion, defendants argue that plaintiff's

negligence claim against these moving defendants is time-barred.  Doc. 15 at 10.  Plaintiff

disagrees, explaining that his negligence claim didn't accrue until his criminal charges were

dropped.  Doc. 25 at 13–14.  Defendants' Reply includes a heading suggesting the negligence

claim is time-barred.  Doc. 30 at 5 ("The Complaint fails to allege a negligence claim . . . any

such claim is time-barred by the two-year statute of limitations.").  But that's it.  Defendants say

no more on this particular matter.[4]

Defendants' failure to address these arguments amounts to a waiver.  *See In re FCC 11-
161*, 753 F.3d 1015, 1100–01 (10th Cir. 2014) (rejecting petitioners' argument on an issue

because their reply brief was silent on the issue and made no attempt to rebut respondents'

argument); *see also Cayetano-Castillo v. Lynch*, 630 F. App'x. 788, 794 (10th Cir. 2015)

(holding that an appellant, who does not respond to an argument in its reply brief, "'waives, as a

practical matter anyway, any objections not obvious to the court to specific points urged by the

appellee'" because the court is not "required to do his work for him and dissect [the appellee's]

plausible argument" (quoting *Hardy v. City Optical, Inc.*, 39 F.3d 765, 771 (7th Cir. 1994))).

So, summarizing the results to date, here's the statute-of-limitations scoreboard:  Plaintiff

has waived or abandoned his § 1983 and state law false imprisonment claims (Counts V and

---

4       Substantively, they argue that plaintiff has failed to allege a legal duty—more on that argument
later—but they never rebut plaintiff's statute of limitations argument.  Doc. 30 at 5.

VII).  The court dismisses those claims.  And defendants in turn have waived their statute of limitations argument on plaintiff's negligence claim (Count VI).  That claim remains viable.

The court's remaining task, then, is to evaluate whether plaintiff has stated claims for § 1983 (malicious prosecution) or state law negligence.  Part C takes on this task.

### C.    Failure to State Claims

Recall that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  The court takes all plaintiff's factual allegations as true, except for conclusory allegations.  *Iqbal*, 556 U.S. at 678.

### 1.    § 1983 Malicious Prosecution & *Monell* Liability (Count V)

Governing law recognizes two layers "when a § 1983 claim is asserted against a municipality:  (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).  "The absence of an affirmative answer to either of these questions is fatal to a claim against the municipality." *Crowson v. Wash. Cnty., Utah*, 983 F.3d 1166, 1186 (10th Cir. 2020).  "Liability will not attach where there was no underlying constitutional violation by any of the municipality's officers." *Ellis ex rel. Est. of Ellis v. Ogden City*, 589 F.3d 1099, 1104 (10th Cir. 2009) (quotation cleaned up).

To identify a constitutional violation, the court looks to substantive law.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("§ 1983 merely provides a mechanism for enforcing individual rights secured elsewhere, *i.e.*, rights independently secured by the Constitution and laws of the United States." (quotation cleaned up)); *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1118 (D. Kan. 2021) (Section 1983 "creates no substantive

rights in and of itself, but merely provides a mechanism for enforcing a right conferred by the Constitution or federal statute.").

To determine municipal liability, the court evaluates whether a "municipal policy or custom was the moving force behind the constitutional deprivation." *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 667 (10th Cir. 2010); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").  The court begins its assessment by outlining the parties' positions.

### a.      The Parties' Arguments

Count V asserts a *Monell* claim against these two moving defendants.  *See* Doc. 25 at 3 ("Plaintiff's Complaint states a municipal liability claim against Defendants for malicious prosecution.  Defendants are liable because they engaged, aided, and permitted the PBPN to operate as officers and agents of Defendants. . . . Defendants' municipal policy of utilizing the PBPN without any oversight resulted in violation of Plaintiff's constitutional rights.").  Defendants argue plaintiff has failed to state a malicious prosecution claim against the moving defendants because "the Complaint does not allege any basis for imposing *Monell* liability on Jackson County or Sheriff Morse for the conduct of PBPN officers."  Doc. 15 at 8.  According to defendants, there "was no custom or policy of the County or Sheriff Morse that caused or was the moving force behind Musick's arrest and prosecution."  *Id.* at 9.  In essence, defendants zero in on the county and sheriff's behavior.  But, in response, plaintiff contends the PBPN officers' actions are "fairly attributable to defendants."  Doc. 25 at 3 (quotation cleaned up).  Plaintiff emphasizes that the PBPN officers qualify as state actors under the joint action, public function,

and nexus tests. *Id.* at 4–6. And so, he premises his § 1983 malicious prosecution claim on the PBPN officers' conduct—but not on the county or sheriff's behavior. *Id.* at 6–9.

Evaluating plaintiff's malicious prosecution claim, the court takes up this dispute first. It addresses whether plaintiff plausibly has alleged that the court may attribute the PBPN officers' conduct fairly to defendants. Then, the court turns to plaintiff's policy-or-custom arguments.

### b.    State Action

Plaintiff's argument that the PBPN officers' conduct can serve as the underlying constitutional violation for a municipal liability claim requires the PBPN officers to qualify as state actors. That's so because "private conduct, 'no matter how discriminatory or wrongful,' may not be redressed by a § 1983 claim." *Read v. Klein*, 1 F. App'x 866, 870 (10th Cir. 2001) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)). And "[t]he rights under the Fourth and Fourteenth Amendments to the Constitution of the United States of America at issue secure protection only against infringement through state action." *Tapia v. City of Albuquerque*, 10 F. Supp. 3d 1207, 1257–58 (D.N.M. Mar. 31, 2014) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978)). "Although § 1983 actions are typically brought against state officers or employees, the language of § 1983 and this Circuit's interpretation of this language permit plaintiffs to bring actions against private persons acting under color of law." *Lane v. Johnson*, 385 F. Supp. 2d 1146, 1150 (D. Kan. 2005) (citation omitted). "To help decipher which private parties may be considered state actors, the Tenth Circuit has outlined four tests: 1) the public function test; 2) the nexus test; 3) the symbiotic relationship test; and 4) the joint action test." *Id.* (citing *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995)).

Plaintiff seizes on our Circuit's private-parties approach to argue that the PBPN officers

at issue here were state actors to whom *Monell* liability applies. That is, plaintiff uses these tests to attribute the PBPN officers' conduct to defendants, who are state actors. He argues the joint action test, the public function test, and the nexus test apply, and that he's alleged enough facts to justify all three tests. Doc. 25 at 4–6. Defendants disagree. Doc. 30 at 3–4. The court merely evaluates the public function test, concluding plaintiff has alleged plausibly that the county delegated some of its functions to the PBPN officers. And this delegation, the court concludes, provides a plausible avenue to attribute the PBPN officers' conduct to the defendants here—the BOCC and Sheriff Morse.

### i.    Public Function Test

"A private party is a state actor if the state delegates to that party a function 'traditionally exclusively reserved to the State.'" *Cont'l Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1086 (D. Kan. 2007) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)). Many functions are "traditionally performed by governments," but few are "exclusively reserved to the State." *Id.* (citing *Flagg Bros.*, 436 U.S. at 158). "This test is difficult to satisfy." *Gallagher*, 49 F.3d at 1456.

As defendants emphasize, plaintiff's Complaint doesn't allege that defendants delegated law enforcement authority to the PBPN or its officers. Doc. 30 at 3. But plaintiff suggests that arresting, administering breath tests, transporting a detainee to the County Jail, and submitting probable cause affidavits are more of a public function than, for example, a private "security guard, detaining someone on store property until the police arrive." Doc. 25 at 5. To be sure, reporting suspicious activity to police and repeating that testimony in court are not public functions, exclusively. *Cf. Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1156 (10th Cir. 2016) (addressing nexus test and explaining "any citizen can report suspicious activity to the

16

police and repeat that testimony in court; in doing so, the parking enforcement officers exercised no power possessed by virtue of state law and made possible only because the parking officers were clothed with the authority of state law" (quotation cleaned up)); *see also Gallagher*, 49 F.3d at 1457 ("The courts have consistently held that the mere fact that an individual's job involves the investigation of crime does not transform him into a government actor." (quotation cleaned up)). And, at least in the private security context, "[s]earches and seizures by private security employees have traditionally been viewed as those of a private citizen and consequently not subject to Fourth Amendment proscriptions." *United States v. Lima*, 424 A.2d 113, 118 (D.C. 1980). To plaintiff's point, though, filing a probable cause affidavit and administering breathalyzer tests aren't things that ordinary private citizens traditionally do. Plaintiff hasn't directed the court to any authority to bolster this argument. He hasn't cited any cases concluding this conduct is an exclusive traditional public function—or that a private citizen couldn't do these things. But this omission doesn't outstrip defendants', who also haven't cited any authority to the contrary.

In the absence of cited authority from the parties, the court concludes that plaintiff has alleged the public function test sufficiently. Plaintiff alleges the PBPN officers' administered tests for alcohol without authority to act as law enforcement officers. Doc. 1 at 10 (Compl. ¶ 65). Under Kansas law, only law enforcement officers may direct alcohol tests. Kan. Stat. Ann. § 8-1001(a) ("The test must be administered at the direction of a law enforcement officer[.]"). And, plaintiff alleges, the PBPN officers weren't acting with law enforcement authority because they failed to comply with Kan. Stat. Ann. § 22-2401a. Doc. 1 at 10 (Compl. ¶ 65); Kan. Stat. Ann. § 22-2401a (allowing tribal police to "exercise the powers and authority of law enforcement" under certain conditions). What's more, plaintiff alleges, the PBPN officers

transported plaintiff to the Jackson County Jail. Doc. 1 at 10 (Compl. ¶ 69). And he alleges the PBPN officers, acting without authority, submitted a false affidavit in support of the charges against him. *Id.* at 5 (Compl. ¶ 29). Ultimately, plaintiff alleges defendants acquiesced to the PBPN officers' conduct. *See id.* at 12–13 (Compl. ¶¶ 82–88). He alleges defendants knew the PBPN didn't have statutory authority to function as law enforcement officers. *Id.* at 12 (Compl. ¶ 83). Plaintiff also alleges that Jackson County prosecuted him. *Id.* at 12–13 (Compl. ¶ 87).[5]

While plaintiff never alleges explicitly that defendants delegated their law enforcement authority to the PBPN, the court, at this stage, must draw all inferences to plaintiff's favor. *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024) ("We accept a complaint's well-pleaded allegations as true, viewing all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings." (quotation cleaned up)). And although "mere acquiescence" isn't sufficient, the court can infer from plaintiff's Complaint that the state did more than simply acquiesce to the PBPN officers' performance of law enforcement functions. *See Flagg Bros., Inc.*, 436 U.S. at 164 ("This Court, however, has never held that a State's mere acquiescence in a private action converts that action into that of the State."). Plaintiff's allegations allow the court to infer that the PBPN officers performed a traditional public function: administering tests for the presence of alcohol—a task reserved to law enforcement officers under Kansas law—and filing an "affidavit to charge him with driving under the influence, disorderly conduct, and criminal trespass" in Jackson County. Doc. 1 at 5 (Compl.

---

[5]     Defendants argue that it's proper "for tribal authorities to arrest non-Indian offenders on the reservation and tender them to the appropriate local authorities for prosecution." Doc. 30 at 4; Doc. 15 at 7 (citing *Duro v. Reina*, 495 U.S. 676, 697 (1990)). And, they also assert, noncompliance with Kan. Stat. Ann. § 22-2401a doesn't make the PBPN officers' conduct unlawful. Doc. 15 at 7. Instead, the PBPN officers were acting as private citizens, making a citizen's arrest. *Id.* Perhaps that's so. If it is, it undercuts plaintiff's theory that making an arrest is a traditional public function reserved exclusively to the state. *See, e.g.*, *Carey v. Cont'l Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987) ("If Gilbert himself made a 'citizen's arrest' of Carey, as Carey asserts, this does not make Gilbert a state actor."). But even accepting defendants' argument, it doesn't vitiate concern that conducting sobriety tests and filing probable cause affidavits to support charges are traditional and exclusively public functions.

¶ 29). So, the court properly can infer from plaintiff's limited allegations that defendants delegated that function by accepting the PBPN officers' affidavit and charging plaintiff based on it.

Defendants' response argues just that the "public function test has no application. There's no allegation Sheriff Morse, for example, delegated his law enforcement authority to the [PBPN] or its officers. Sheriff Morse does not deputize [PBPN] Officers as Sheriff's deputies." Doc. 30 at 3 (emphasis omitted); *see also id.* ("The Complaint expressly alleges the [PBPN] and its officers [acted] without authorization or agreement by Sheriff Morse." (emphasis omitted)). While plaintiff's allegations here aren't as explicit as they might be, the court, absent a more fulsome argument in response to plaintiff's public function argument, drawing all inferences in plaintiff's favor, and comparing the alleged conduct to other cases addressing private involvement with law enforcement, concludes plaintiff sufficiently has alleged the public function test applies. *Cf. Wood v. City of Topeka*, No. 01-4016-SAC, 2003 WL 21289983, at *4 (D. Kan. May 23, 2003) (finding no state action from detention by store employees until city police arrived and plaintiff never alleged any procedure, policy, or concerted action by government and store employees); *Mixon v. Cowboys OKC, Inc.*, No. CIV-12-199-R, 2012 WL 1977952, at *3 (W.D. Okla. June 1, 2012) (concluding plaintiff hadn't alleged facts allowing court to infer defendants delegated traditional state function to off-duty police officers authorized to use deadly force because private citizens could use deadly force in self-defense).

Having sufficiently alleged the PBPN officers' conduct constituted state action via delegation, the court next evaluates whether plaintiff properly has alleged municipal liability.[6]

---

[6]    Defendants never challenge whether plaintiff has alleged an underlying constitutional violation stemming from PBPN officers' conduct. *See generally* Doc. 15; Doc. 30. So, despite defendants' arguments about the elements of malicious prosecution, the court declines to evaluate whether plaintiff has stated a malicious prosecution-based § 1983 claim. Defendants' malicious prosecution argument

### c.    *Monell* Liability

"To hold a municipality liable under § 1983, a plaintiff must prove (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) the policy or custom was the moving force behind the constitutional deprivation." *Crittenden v. City of Tahlequah*, 786 F. App'x 795, 800 (10th Cir. 2019) (citing *Monell*, 436 U.S. at 694). The policy-or-custom requirement "distinguishes the 'acts of the municipality from acts of employees of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible.'" *Id.* (emphasis omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

The Tenth Circuit has recognized five ways that an action can qualify as a policy or custom:

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that ... is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id.* (quotation cleaned up). Plaintiff invokes three of these methods—failure to train, widespread practice, and decision by a final policymaker. Doc. 25 at 10–12.

But defendants' Reply simply argues: "Nothing Sheriff Morse did, and none of his policies, practices, and/or customs was the moving force behind the constitutional deprivation

---

focuses on whether plaintiff can prove the elements as they apply to Sheriff Morse or BOCC. Doc. 15 at 6; Doc. 30 at 4–5. But that's not the relevant question for *Monell* purposes. Instead, the relevant question is whether the PBPN officers committed an underlying constitutional violation for which defendants are liable.

alleged by Musick." Doc. 30 at 4. In this one-sentence argument, defendants double-down on their perspective that "the alleged wrongdoing was that of PBPN officers, not employees or deputies of Jackson County or Sheriff Morse." Doc. 15 at 8. Defendants never meaningfully respond to plaintiff's policy-or-custom arguments. They simply conclude there's no alleged policy or custom. Defendants thus fail to engage with plaintiff's allegations at all. The court declines to "do [defendants] work for [them] and dissect [plaintiff's] plausible argument." *Cayetano-Castillo*, 630 F. App'x at 794; *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (explaining that where party presents "poorly developed" arguments, the court will "consider and discuss only those . . . that have been adequately briefed"). Thus, the court denies defendants' Motion to Dismiss based on a failure to assert a municipal liability claim against defendants.

Finally, the court turns to defendants' last argument: whether plaintiff has stated a claim for negligence against these defendants.

### 2.    Negligence (Count VI)

Defendants argue plaintiff has failed to state a negligence claim under Kansas law. Doc. 15 at 9–10. Negligence in Kansas has four elements: duty, breach, causation, and damages. *Hesler v. Osawatomie St. Hosp.*, 971 P.2d 1169, 1174 (Kan. 1999). According to defendants, plaintiff has failed to allege defendants owed any duty to plaintiff. Doc. 15 at 9–10. Plaintiff's duty theory is difficult to isolate. The Complaint alleges defendants "owed a duty of care to Mr. Musick and assumed a duty of care *once they detained him in their jail and prosecuted him*." Doc. 1 at 13 (Compl. ¶ 92) (emphasis added) (implying duty arose after the PBPN conduct occurred). Confusingly, defendants argue that plaintiff's theory is based on Kan. Stat. Ann. § 22-2401a. *Id.* at 10. This statute provides a mechanism for tribal law enforcement officers to

exercise law enforcement authority, when certain conditions are met.  Kan. Stat. Ann. § 22-2401a(b).  Defendants emphasize that the statute doesn't impose a duty on counties or sheriffs to ensure tribal compliance.  Doc. 15 at 10.

In response to defendants' motion, plaintiff clarifies his duty theory as one sounding in respondeat superior.  Doc. 25 at 12 (citing *Brown v. Wichita State Univ.*, 540 P.2d 66, 75 (Kan. 1975), *vacated in part on reh'g on other grounds*, 547 P.2d 1015 (Kan. 1976)).  Plaintiff suggests that defendants—as principals—owed a duty to prevent harm from the PBPN, their agent.  *Id.*; *Brown*, 540 P.2d at 75 ("The liability of a principal for the negligent acts of his agent is determined by whether the agent was engaged in the furtherance of the principal's business to such a degree that the principal had the right to direct and control the activities of the agent.").  Plaintiff also doubles down on their respondeat superior theory, citing a case invoking employer liability for conduct by employees acting in the scope of employment.  Doc. 25 at 12 (citing *Reardon ex rel. Parsons v. King*, 452 P.3d 849, 855 (Kan. 2019)).

The Complaint never alleges an employment relationship between defendants and PBPN, or PBPN officers.  *See* Doc. 30 at 5 ("The response ignores the fact the Complaint does not allege that any of the alleged [PBPN] officers were Sheriff's deputies or employees.  Sheriff Morse has no duty to train or supervise Tribal police officers.").  Plaintiff's Response never identifies the particular allegations in the Complaint alleging an agency relationship.  *See* Doc. 25 at 12–13 (citing to the Complaint strictly to show breach allegations).  All the allegations implying an agency relationship are purely conclusory.  *See, e.g.*, Doc. 1 at 13 (Compl. ¶ 93) ("Defendants . . . breached their duty of care by permitting the PBPN and its officers to exercise law enforcement power and authority . . . .  Defendants knew that the PBPN and its officers did not have legal authority[.]"); *id.* at 14 (Compl. ¶ 96) ("[Defendants] . . . breached their duty of

care by permitting the PBPN and its officers to detain, arrest, and transport individuals to the

Jackson County Jail to be prosecuted in Jackson County courts, resulting in financial benefit to

the County."); *id.* at 13 (Compl. ¶ 88) (explaining in § 1983 count that defendants "caused the

deprivation of Mr. Musick's constitutional rights because they permitted by PBPN to act as agent

of the County").  Remember that the court needn't accept conclusory allegations as true.  *Park*

*Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 314 F. Supp. 2d 1094, 1100 (D. Kan. 2004)

("'All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true.'"

(quoting *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984))).  What's more, plaintiff never

alleges the PBPN officers assented to act on defendants' behalf and subject to their control.

Moreover, plaintiff's own allegations undercut an agency theory.  Kansas law provides

that a principal-agent relationship is created "when one person (a 'principal') manifests assent to

another person (an 'agent') that the agent shall act on the principal's behalf and subject to the

principal's control, and the agent manifests assent or otherwise consents so to act."  *Golden Rule*

*Ins. Co. v. Tomlinson*, 335 P.3d 1178, 1188 (Kan. 2014).  In contrast here, plaintiff alleges the

"PBPN and its Officers did not have an agreement with the Jackson County Sheriff's Office to

exercise law enforcement power and authority[.]"  Doc. 1 at 4 (Compl. ¶ 23).  And, under

"Kansas law, a principal's liability for his agent's negligence is determined by asking whether, at

the time in question, the agent was engaged in the furtherance of the principal's business to such

a degree that the principal had the right to direct and control the agent's activities."  *Doe v. Lyft,*

*Inc.*, No. 23-2548-JWB-TJJ, 2024 WL 4651015, at *4 (D. Kan. Nov. 1, 2024) (first citing

*Brinkley v. Farmers Elevator Mut. Ins. Co.*, 485 F.2d 1283, 1286 (10th Cir. 1973); then citing

*Brown*, 540 P.2d at 75; and then citing *Hughes v. Jones*, 476 P.2d 588, 592 (Kan. 1970)).

Plaintiff alleges, but only in conclusory fashion, that defendants "permitt[ed]" PBPN and its

officers to engage in certain conduct. *See* Doc. 1 at 13–14 (Compl. ¶¶ 93–97). That's a far cry from alleging defendants had the right to control those activities. Plaintiff's allegations and his arguments in response to this motion come up short. Plaintiff fails to state a negligence claim against BOCC and Sheriff Morse.

### 3.    An Apparent Inconsistency

At first blush, the court's conclusion about plaintiff's negligence claim might appear inconsistent with its conclusion about the PBPN officers' state action under the public function doctrine. But those two standards differ. On the constitutional front, plaintiff must allege defendants "delegate[d] . . . a function 'traditionally exclusively reserved to the State.'" *Cont'l Coal, Inc.*, 511 F. Supp. 2d at 1086 (quotation cleaned up). But for the state tort, plaintiff must allege defendants "manifest[ed] assent to" the PBPN officers that they "shall act on the [defendants'] behalf and subject to the [defendants'] control, and the [PBPN officers] manifest[ed] assent . . . so to act." *Golden Rule Ins. Co.*, 335 P.3d at 1188. Key to the principal-agent relationship is "that the principal had the right to direct and control the agent's activities." *Doe*, 2024 WL 4651015, at *4. Drawing all inferences in plaintiff's favor, the court can conclude plaintiff has alleged the former, but not the latter.

In essence, plaintiff argues defendants delegated to the PBPN the traditional public function of conducting sobriety tests and filing probable cause affidavits. Doc. 25 at 5. Plaintiff alleges PBPN officers transported plaintiff to the county jail and submitted a false probable cause affidavit against him, and the county later prosecuted him for the offenses described therein. Doc. 1 at 5, 10, 12–13 (Compl. ¶¶ 29, 69, 87). These allegations permit the court to infer that defendants delegated *some* authority to the PBPN officers to perform traditional public functions. For example, mechanisms were in place to allow a non-Jackson County officer to file a probable

cause affidavit. So, plaintiff has stated—at this stage—an application of the public function doctrine.

But these allegations don't lead to an inference that defendants and the PBPN agreed that the PBPN would act on defendants' behalf to file probable cause affidavits and conduct sobriety tests. Plaintiff never alleges manifested assent. And plaintiff's allegations don't allow the court to infer defendants "had the right to direct and control" the manner in which PBPN officers conducted this business. *Doe*, 2024 WL 4651015, at *4. In short, plaintiff's allegations allow "the court to draw the reasonable inference" that defendants delegated to plaintiff a traditional public function. *Iqbal*, 556 U.S. at 678. But those allegations don't allow the court to draw a reasonable inference of an agency relationship—which requires mutual assent and reserved control by the principal.

## V.    Conclusion

To recap: The court construes defendants' 12(c) motion for judgment on the pleadings as a 12(b)(6) motion to dismiss. It declines to dismiss BOCC as a party, given the lack of legal clarity and limited briefing. The court concludes plaintiff has abandoned his § 1983 claim based on false imprisonment and his state law false imprisonment claim because he failed to rebut defendants' statute of limitations arguments. And plaintiff has failed to state a negligence claim against defendants because he doesn't allege plausibly a principal-agent relationship. But the court also declines—based on the arguments defendants adequately presented—to dismiss plaintiff's malicious-prosecution-based *Monell* liability claim under § 1983.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Judgment on the Pleadings (Doc. 15) is granted in part and denied in part. The court dismisses, without prejudice, the following claims: § 1983 (Count V) to the extent it rests on false

imprisonment; negligence (Count VI); and false imprisonment (Count VII).

**IT IS SO ORDERED.**

**Dated this 28th day of March, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
